The People *v.* Lamb.

---

THE PEOPLE, defendants in error, *vs.* ROGER LAMB, plaintiff in error.(*a*)

Where, on the trial of an indictment for murder, evidence is offered to show that the prisoner killed the deceased in self defense, and that he feared the deceased intended to attack him, the rule is that the prisoner must have had reasonable ground for believing the deceased intended to take his life, or to do him bodily harm, and that there was reasonable ground for supposing the danger imminent that such design would be accomplished, although it should afterwards appear that no such design existed—that there was no real danger of its being perpetrated.

It is not material whether the prisoner's impressions were correct or not; but the true inquiry is whether he had reasonable grounds to suppose he was in danger, and, if such grounds existed, whether the danger was imminent, or whether he could have avoided the danger by departing.

The rule does not permit a jury to convict if they find the prisoner was not justified in forming such an opinion; nor if they are satisfied that the circumstances did not warrant the conclusion; nor if the impressions which the prisoner formed were incorrect.

Their attention should be directed to the inquiry whether the prisoner had any reasonable grounds for forming such an opinion. If he had; then whether the prisoner was justified in forming such an opinion, and whether the impressions formed were correct, would be immaterial.

A charge to the jury that if the prisoner's impressions, as to the existence of danger to himself, were correct, they were a protection, but that if incorrect they afforded him no immunity or protection, was *held* to be erroneous, as it might have led the jury to suppose, if the opinion or impressions formed by the prisoner were wrong, and that he was *not in reality* in danger of some great bodily injury, that his impressions would afford him no protection.

(*a*) Affirmed in the Court of Appeals. See 2 *Abb. N. S.* 148.

The People *v.* Lamb.

On a trial for murder, in the absence of any evidence that the deceased had assaulted the prisoner, evidence to show that the deceased was of a quarrelsome, vindictive and brutal character, is inadmissible. *Per* SUTHERLAND, J.

WRIT of error to the New York general sessions. The plaintiff in error was indicted in the general sessions, in February, 1865, for the murder of his wife, Johanna Lamb. The case was tried in that court on the 20th day of March, 1865, and resulted in a verdict of murder in the first degree. Upon the trial it appeared that the prisoner and his wife resided in the basement of a tenement house at 24 Oak street. The prisoner and deceased appear, from the evidence, to have been living on bad terms. Upon the evening of the 11th of February, 1865, upon the return of the prisoner and his wife home, they had an altercation, the precise nature of which none of the witnesses for the prosecution appear able to state. There was much conflict of testimony as to the progress of the difficulty. It however resulted in the infliction by the prisoner of a wound about half an inch long and an inch and a half deep upon the neck of his wife, severing the carotid artery, causing hemorrhage, from which death resulted. The weapon used was a black-handled pen-knife. The defense interposed was that of self defense. It was shown in the prisoner's behalf that a direct and violent assault, in the same quarrel which resulted in her death, was made by the deceased upon the prisoner, and that she told him she would murder him if he did not go out of her sight; that she was in the habit of wishing every morning that the prisoner might die before night; that she was in the habit of carrying a pen-knife in her pocket, and often threatened to kill the prisoner. It was shown, without contradiction, that the prisoner was a peaceable and quiet man; and it was admitted that he was a consumptive, and in feeble health. The deceased was a strong woman, about 32

years of age, and inclined to be very muscular; and it appears that in their previous quarrels she (deceased) was the smarter of the two. The prisoner offered to prove that the general character of the deceased was that of a quarrelsome, fighting, vindictive and brutal nature, and that these characteristics were within his (prisoner's) knowledge. The district attorney objected to the admission of any testimony as to the character of the deceased, and the court sustained the objection, and refused to allow the same to be given in evidence; to which decision the counsel for the prisoner excepted.

*Wm. F. Kintzing, Jr.*, for the plantiff in error. I. The court below erred in refusing to permit the prisoner to prove the quarrelsome, fighting, vindictive and brutal character of the deceased, and that he knew her character. After the prosecution closed the prisoner called on Ann Booth as a witness, and offered to prove that the general character and habits of the deceased were those of a quarrelsome, fighting, vindictive and brutal character, and that the defendant knew it. The court refused to allow the above mentioned facts, or any of them, to be proved, to which the counsel for the prisoner duly excepted. Other witnesses were also called to prove the same fact, but the court made the same ruling. Counsel for the prisoner took a similar exception. 1. The case presented to the jury one of those cases in which it becomes necessary for them to to pass upon the veracity of witnesses; in so doing they are to form their conclusions not only from the personal appearance of the witnesses, but also from the probability and improbability of their stories. In this view of the case the characters of the two parties to the transactions become of the utmost importance, to show by whom the quarrel probably was originally commenced, and the parts each respectively took in it. (2 *Hale's Crim. Law, p.* 146. *Will's Cir. Ev. p.* 10 *et seq.* 3 *Grah. & Wat. on New Trial,*

The People *v.* Lamb.

*p.* 1275 *et seq. and cases cited. Woodin* v. *People,* 1 *Park. Crim. Cases,* 464.) 2. In a case where the evidence shows that there was an assault committed or threatened by the deceased upon the prisoner, and there is a doubt as to whether the homicide was perpetrated from malice or to repel such assault, and from a principle of self defense, it is proper to admit any testimony calculated to illustrate to the jury the motive by which the prisoner was actuated; and, in this view of the case, evidence that the deceased was, to the knowledge of the prisoner, of a fighting, quarrelsome and vindictive character, was improperly excluded, as the same tended to show the grounds the prisoner had for apprehending great bodily harm, especially when the prisoner was in a feeble and delicate state of health. (*Reynolds* v. *The People,* 17 *Abb. Pr.* 413. *Whart. Am. Cr. Law,* § 641, 5th ed. *Whart. on Homicide, p.* 249. *Com.* v. *Siebert, Id.* 227, 228. *People* v. *Pfomer,* 4 *Park. Cr. Rep.* 558. *State* v. *Tackett,* 1 *Hawks,* 210. *Queensbury* v. *State,* 3 *Stew. & Port.* 308. *Monroe* v. *State,* 5 *Ga. Rep.* 85. *Pritchett* v. *State,* 22 *Ala. Rep.* 39. *Franklin* v. *State,* 29 *id.* 14. *Keener* v. *State,* 18 *Ga. Rep.* 194. *Dukes* v. *State,* 11 *Ind. Rep.* 557. *State* v. *Hicks,* 27 *Mo. Rep.* 588. *Payne* v. *Com.,* 1 *Metc. Ky. Rep.* 370. *State* v. *Tilly,* 3 *Iredell,* 424. *Campbell* v. *People,* 16 *Ill. Rep.* 18.) 3. The defense in this case being that of self defense, or that the offense, if any, was of no higher grade than that of third degree manslaughter, the evidence excluded was relevant and important, as tending to show the probability of a sudden quarrel, or the fact of reasonable ground of apprehension on the part of the prisoner of a personal injury. (*See cases cited under point I, sub.* 2.)

II. The court below erred in charging the jury that "the law presumes malice from the mere act of killing." There is no such presumption, when the facts connected with the killing are before the jury; and they cannot infer any malice, unless the act be shown to have been

committed in a cruel or intentional manner. (*Whart. Am. Cr. Law*, § 709, *5th ed. Whart. on Hom. p.* 34 *and note. Com.* v. *Webster*, 5 *Cush.* 320. *Com.* v. *Hawkins*, 3 *Gray*, 463. *Com.* v. *York*, 9 *Metc.* 93.)

III. The court below erred in charging the jury that "it is not his impressions alone, but the question is whether those impressions, at the time he formed them, were correct; if they were correct, it is a protection; if they were incorrect, then it affords him no immunity or protection." If life is taken by one, under the impression that it was the intent of the deceased to do him some great bodily harm, and there is reasonable ground for believing the danger imminent, and that such design will be accomplished, it is a protection, although those impressions should afterwards turn out to be incorrect. (2 *Edm. R. S. p.* 680. *Shorter* v. *People*, 2 *Comst.* 193. *Com.* v. *Selfridge*, reported in *Whart. Hom. p.* 455. *People* v. *Rector*, 19 *Wend.* 569. *Levet's case*, 1 *East's P. C.* 274. *Wm. Hawksworth*, 1 *Hale's P. C.* 40. *Peterborough's case, Id.* 40.)

IV. The court below erred in refusing to charge the jury, as requested by the counsel, "that if the jury have a reasonable doubt, from the evidence, as to what degree of guilt to convict, it is their duty to convict of the lesser degree." The court said, "that is a matter purely for your determination. If you are not satisfied that he intended the act, as I said before, you can find him guilty of either of the lesser degrees." It is not discretionary with the jury as to what degree of guilt to convict; if there are doubts as to the degree, they are "bound" to find the lesser degree. (*Whart. Am. Cr. Law*, § 710, *5th ed.* 2 *Russ. on Crimes*, 731. *Com.* v. *Hawkins*, 3 *Gray*, 463. *Mitchel* v. *State*, 5 *Yerg.* 000. *Davis* v. *State*, 10 *Ga. Rep.* 000. *State* v. *Turner*, *Wright*, 20. *Com.* v. *Hill*, 2 *Grat.* 594. *State* v. *Coffee*, 3 *Yerg.* 283. *People* v. *Milgate*, 15 *Cal. Rep.* 127.)

The People *v.* Lamb.

*A. Oakey Hall,* (district attorney,) for the people.  I. The testimony of officer Heape was admissible.  1. That which an accused *says,* is sometimes excluded by reason of a presumed coercion that may affect his truthfulness.  That which he *does,* is never excluded; because the physical deed destroys the idea of possible falsity.  (*Duffy* v. *People,* 26 *N. Y. Rep.* 590, 591.)  2. Besides, the evidence thus introduced, tending to show that the knife obtained by the officer was the homicidal weapon, became unprejudicial.  The defense admitted the killing with the knife.

II. Evidence of the general character of deceased was inadmissible.  (1 *Whart. Cr. Law,* 641.)

III. The charge of the court was in every respect legally just to the prisoner.

INGRAHAM, P. J.   When the evidence is offered to show that the prisoner killed the deceased in self defense, and that he feared the deceased intended to attack him, the rule is that the prisoner must have had reasonable ground for believing the deceased intended to take his life or to do him bodily harm, and that there was reasonable ground for supposing the danger imminent that such design would be accomplished, although it should afterwards appear that no such design existed—that there was no real danger of its being perpetrated.  (*See various authorities in Pfomer* v. *The People,* 4 *Park. C. R.* 558.)

The city judge charged, "If he thinks his life is in imminent peril, he has a right to act upon that thought and take life; but if he does it, it is at the risk of a jury saying, when all the facts are developed before them, whether he was justified in forming that opinion or not.  If you are satisfied from the evidence that the circumstances did not warrant the conclusion that he arrived at, and that he took life, it is no justification, and you have a right to convict.  It is not his impressions alone, but the question is whether those impressions were correct.  If they were

correct, it is a protection.   If they were incorrect, then it affords him no immunity or protection."   As I understand the rule, it is not material whether the impressions were correct or not; but the true inquiry is whether the prisoner had reasonable grounds to suppose he was in danger, and, if such grounds existed, whether the danger was imminent, or whether he could have avoided the danger by departing.  It did not permit a jury to convict if they should find he was not justified in forming such an opinion; nor if they were satisfied that the circumstances did not warrant the conclusion; nor if the impressions which the prisoner formed were incorrect.   Their attention should have been directed to the inquiry whether the prisoner had any reasonable grounds for forming such an opinion. If he had, then whether the prisoner was justified in forming such an opinion, and whether the impressions formed were correct, would be immaterial.

I cannot avoid the conclusion that the latter part of these instructions may have led the jury to suppose if the opinion or impressions formed by the prisoner were wrong, and that he was *not in reality* in danger of some great bodily injury, that his impressions would afford him no protection.

The question of justification in forming such opinions is not properly for the jury; but the true question is whether there were reasonable grounds for thinking so; whether the conclusion was true or not.   If he had no reasonable grounds for forming such an opinion, he was not protected; but if he had such reasonable grounds, then, although such impressions were incorrect, he was excused.

It is true that subsequently, when requested to charge in the words of the statute, that if the jury believed that when the prisoner struck the blow, he had a reasonable ground to apprehend a design to do him some bodily harm &c., then he was justified in striking the blow, and it was their duty to acquit, he replied, " I have charged already

The People *v.* Lamb.

in that way." Such a remark, however, can hardly be said to be an instruction to the jury. It is rather an answer to counsel, to a request made of the court, and cannot be considered sufficient to remove the impression which the previous remarks made directly to the jury must have made.

I think the judgment should be reversed, and a new trial ordered.

LEONARD, J., concurred.

SUTHERLAND, J., (dissenting.) The prisoner was indicted for the murder of his wife, by stabbing her in the neck with a knife.

On the trial, after the evidence on the part of the people had been given, the prisoner's counsel offered to prove that the general character and habits of the deceased were those of a quarrelsome, fighting, vindictive and brutal nature, and that the prisoner knew it, and that the deceased was of great strength.

The evidence as to general character, being objected to, was excluded by the city judge. The prisoner's counsel then offered to show that the deceased was of a quarrelsome, vindictive and brutal character. This evidence was also objected to and excluded by the city judge.

I think the evidence as to general character and as to character was properly excluded, for the simple reason that if the evidence had been received, it would not have justified or tended to justify the commission of the alleged act or crime for which the prisoner was being tried. When this evidence was offered, there was no evidence tending to show that the deceased, on the occasion when she lost her life, assaulted the prisoner; on the contrary, the evidence which had been given on the part of the people tended to show conclusively that she did not on that occa-

sion assault him, but that he did assault her, first with a stick, and his hands, and then with the knife.

The case of *Reynolds* v. *The People* (17 *Abb.* 413) could not properly be referred to as an authority to show that the evidence as to the character of the deceased in this case should have been received ; for in the first place, the court did not decide, or intend to decide, in that case, that the evidence to show that Mathews, the deceased, was a dangerous, violent and quarrelsome man, would have been admissible had it appeared that the prisoner was acquainted with him and his character. In the opinion it was remarked that perhaps if this had appeared, the evidence would have been admissible ; but the court had no occasion to decide whether it would or would not, and certainly the court would not have held it to have been admissible, under any circumstances, without further examination. Again, the offer in the case of Reynolds was to show that he was a dangerous, violent, quarrelsome man, and the offer was made under very different circumstances. My recollection is, that the affray in which Mathews lost his life took place suddenly, on a public highway, after dark, and that when the offer was made, the evidence tended to show that Mathews and his party were the attacking party.

Moreover, the formal ruling of the city judge on the question of evidence as to character of the deceased, in the principal case, could not have prejudiced the prisoner, for he was permitted to prove, and did prove, that his wife was a woman of great muscular strength, and had been in the habit of quarreling with him, and upon several occasions had struck him. Indeed, I think it may be said, though the district attorney repeatedly objected to proof as to the character of the deceased as a quarrelsome, brutal woman, yet that her character was in fact as fully proved as though he had made no such objection. It is not probable that the prisoner would have produced any other or

further evidence as to his wife's character than was given, even if his offers of proof as to character had not been formally overruled.

The exception to the remark of the city judge in his charge, that "the law presumes malice from the mere act of killing," &c., is evidently founded on a misconception of the purpose of the city judge in making the remark. He did not intend that the jury should understand from the remark, that in this case, after all the proofs were in, the law presumed malice from the mere act of killing. Looking at the remark in connection with what he had said previously, and with what he said immediately after, it is evident that the jury could not have been misled by the remark. In making the remark he stated a mere abstract principle of common law, and his object in stating it was to show the jury that it was a question for them, under the evidence in the case, whether the legal presumption from the mere act of killing had been removed by the evidence in the case.

The question whether the act of killing, which the prisoner confessedly did commit, was, under the evidence, murder in the first or second degree, or manslaughter, or excusable or justifiable homicide, I think was fairly submitted to the jury.

Upon the theory that the jury might come to the conclusion that Mary Driskol, one of the prisoner's witnesses, in stating that the deceased struck the prisoner with a poker before he gave her the fatal blow, testified to the truth, the city judge charged the jury, in substance, that it was for them to say whether the prisoner was justified in believing or forming the opinion that his life was in danger; that the question was not as to what his impressions were in fact, as to his life being in danger, but whether the evidence showed that he was justified in having such impressions—whether the impressions were correct. Now, though I think it must be conceded that the distinction

taken between what the prisoner thought, and what he was justified in thinking, was impracticable and useless, (for how could the jury find from the evidence that the prisoner thought his life to be in danger, without finding that he was justified in thinking his life to be in danger?) yet I think the jury must have understood the whole. charge on this point to be, in substance, that if they believed Mary Driskol, it was for them to say, under the evidence, whether the prisoner was justified in thinking that it was necessary to take the life of his wife to protect his own, or to protect himself from some great bodily injury.

The court was asked by the prisoner's counsel to charge the jury " that if the jury have a reasonable doubt, from the evidence, as to what degree of guilt to convict, it was their duty to convict of the lesser degree." The court did not charge this in words, but said to the jury, " that is a matter for your determination. If you are not satisfied that he intended the act, as I said before, you can find him guily of either of the lesser degrees." I think this was right. It seems to me that it would have been wrong to have charged the jury that it was their duty to convict of the lesser degree, in any view they might take of the case.

Upon the whole, after giving this case that careful examination which its importance demands, I cannot avoid the conclusion that the conviction of the prisoner must be affirmed.

Conviction set aside, and new trial ordered.

[New York General Term, November 7, 1865. *Ingraham*, *Leonard* and *Sutherland*, Justices.]