## Abernethy *versus* Commonwealth.

1. Wherever death is caused by the use of a deadly weapon, it is for the jury to say under the evidence whether or not there existed "a willful, deliberate and premeditated intention" to take the life of deceased.

2. Where one person upon the provocation of a blow, in the rage and passion produced thereby, kills another, he is guilty of manslaughter only.

3. A killing in hot blood, upon sufficient provocation, is manslaughter.

4. If one man is assailed by another and has reasonable ground to fear for his life or to apprehend grievous physical bodily harm, whether he is really in danger or not, and by reason of the suddenness of the attack he had no means of retreat, the shooting of the assailant by the person assailed is justifiable, or at most manslaughter only.

5. Threats to kill one person uttered by a man, who, later in the same day, shoots another person, are not admissible to prove premeditation, when at the time the threats were uttered the person making use of them had a quarrel with the particular person threatened only, and the contention leading to the shooting had not occurred with the deceased.

6. Hopkins *v.* Commonwealth, 14 Wright 9, distinguished.

7. Where some time prior to the shooting of one person by another the latter applies a coarse term to the former, which he does not resent, and, subsequently, on other provocation, a quarrel arises which results in the shooting, evidence is not admissible on behalf of the person shooting, on his trial for murder, to show that the coarse epithet first employed by him was a common mode of expression among the men in that locality.

8. Where, upon trial of a person for murder, the fact appears from the cross examination of one of defendant's witnesses to good character that the defendant has been when a boy in the Reform School, evidence is admissible on his behalf to show that his admission there was obtained in order to provide him with maintenance and education and not because of any alleged offence on his part.

9. Where on a trial for murder it appears that the defendant and deceased were on terms of intimacy and the killing took place in a sudden scuffle in which there was evidence that the deceased made an assault upon the defendant, if he did not actually strike him; evidence is admissible on behalf of the defendant that the deceased was a man of quarrelsome disposition.

October 16th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT, and GREEN, JJ. PAXSON, J., absent.

ERROR to the Court of Oyer and Terminer of *Allegheny county :* Of October and November Term 1882, No. 57.

Indictment against John Abernethy for the murder of William Leslie. Defendant pleaded not guilty.

On the trial, before COLLIER, J., the following facts appeared :—John Abernethy, the defendant, was a man of about

[Abernethy v. Commonwealth.]

twenty-two years of age, strong and well made. On December 5th 1881, which was the day of the killing, the prisoner came several times to a saloon on Diamond street kept by one Early and took liquor. He also went to other saloons and was throughout the whole day more or less under the influence of strong drink. About two o'clock on the day in question, he met in Early's saloon a man named Kain, who was accompanied by another person whose name was unknown. The defendant in some manner got into a quarrel with Kain and his companion, and the latter thereupon struck the defendant. The defendant shortly afterwards left the saloon, and going into a neighboring establishment of a similar character kept by Thomas Godfrey, asked the latter for a revolver. Godfrey told him that he had not one, and asked him what he wanted it for. He replied that he had been struck next door at Early's and wanted to go to Kain's to see who struck him. One witness named Ross, who was present and heard the conversation between Godfrey and the defendant, further testified that the latter said that " there was some person down at Kain's imposing on him and he was going down there to fix him."

Somewhat later in the afternoon, about five o'clock, the prisoner came back to Early's saloon and walked into the back room, where he found the deceased Leslie and some companions drinking. Abernethy walked up to Leslie and said to him: " Curly, you s—— of a b——, I can lick you." Leslie replied, " You can't take off your coat and say it," but did not seem to take offence, and being an acquaintance of defendant, shook hands with him and began talking amicably with him. After a few minutes Leslie left the room. Abernethy then turned to where one Priddy was sitting, and pulling a revolver from his pocket showed it to him and said that he was going to fix Kain. Priddy testified to having heard him say this, and he was corroborated by one Tuny who was sitting by. A third witness, Dwyer, who was also present, testified to having heard the witness say that he was going to fix somebody, but had not heard any name used. Shortly after, Leslie re-entered the room, but defendant did not join him. In a few minutes, defendant rose to leave the room. As he was passing out of the door he made use of an indécent expression, and Early drew him out into the outer room. Defendant then stopped and talked for some time in the outer room. Deceased meantime remained in the inner room and expressed to his companions his disapprobation of the conduct of defendant, and at length stepped out into the outer room and told him he ought to be licked. He and defendant then got into a violent altercation, which resulted in the deceased telling defendant he was " no good," and striking out at him. Defendant thereupon pulled out his revolver and shot Leslie

dead. Immediately afterwards he walked out and went into the saloon next door, where he was arrested.

The court, under exception by defendant, admitted the evidence relative to defendant's threats against Kain, and subsequently overruled defendant's motion to strike out such evidence or withdraw the same from the jury. (First assignment of error.)

The court also excluded evidence offered by defendant of the quarrelsome disposition and desperate character of deceased. Exception. (Second assignment of error.)

The defendant requested the court to charge, inter alia, as follows:

5. If the jury believes from the evidence that the defendant had no premeditated intention to take the life of the deceased, that he was provoked to passion by liquor and a blow, and that he shot the deceased before this passion had cooled and reason interposed, the offense is manslaughter.

Answer. If the defendant, upon sufficient provocation, to-wit, a blow, and in a rage or passion produced thereby, shot the deceased, it would be manslaughter. Exception. (Third assignment of error.)

6. A killing in hot blood, without premeditation, is manslaughter.

Answer. A killing in hot blood, upon sufficient provocation, is manslaughter. Exception. (Fourth assignment of error.)

7. That, if the jury believes that at the time of the shooting, defendant had been assailed by deceased and had reasonable ground to fear for his life, or to apprehend grievous bodily harm, whether he was really in danger or not, and by reason of the suddenness of the attack he had no means of retreat, then the shooting would be justifiable, or at most would only be manslaughter.

Answer. Affirmed, if you find the facts as stated in this point, I am unable to see the facts in evidence to justify this point, so far as to justify the defendant; but that is for the jury alone. Exception. (Fifth assignment of error.)

8. That the jury must exclude, in the consideration of the case, any testimony as to any threats alleged to have been made by defendant, against "Kain" or any other person, except deceased. Refused. Exception. (Sixth assignment of error.)

Defendant, having called one McBratney as a witness, made the following offer of evidence:—

"It having been given in evidence that the defendant, Abernethy, on the evening of this fatal shooting, addressed Leslie as ' you son of a bitch,' when he first met him in Kraeger's saloon, defense proposes to ask the witness on the stand whether that was not a common mode of expression among the men employed

where Abernethy, Leslie and himself (witness) were also employed. This, taken in connection with the testimony that shortly after this address, the defendant and the deceased were engaged in a peaceable and friendly conversation, and for the purpose of showing that the mere use of this term raises no presumption of malice in this case or ill-will toward the deceased."

Objected to as incompetent and irrelevant.

By the Court : " As this offer does not propose to show that the prisoner and the deceased were accustomed to address each other by that term, this offer is overruled and bill sealed for defendant." Exception. (Seventh assignment of error.)

Defendant having called one David McKelvy as a witness made the following offer of evidence :

" It having been brought out on cross-examination of a witness for the good character of defendant for peace and good order, that he had been in the House of Reform some two or three years of his life, defendant, by his counsel, proposes to prove by the witness on the stand that his (defendant's) father had deserted him ; that he had no means of livelihood or education, and that the defendant, in company with his mother, went to the office of ·C. D. Smith, an alderman in the city of Allegheny, in which office the witness on the stand was at that time employed, and that they voluntarily sought from the alderman admission for this boy to the reform school ; that he went there in accordance with his own request and his mother's, and not because of any alleged offence."

Objected to by counsel for the Commonwealth, " as not the best evidence of the cause for which he was committed, the commitment being the best, and as incompetent and irrelevant."

By the Court : " The witness having testified to the general character for peace of the defendant, and the counsel for defendant not having objected to the cross-examination, this offer is overruled and bill sealed for defendant." Exception. (Eighth assignment of error.)

Defendant having called his mother as a witness made the following offer of evidence :

" Defendant, by his counsel, proposes to show by the witness on the stand, his mother, that she (witness) in company with her son, went to the office of C. D. Smith, an alderman in the city of Allegheny, and procured the admission of her son to the reform school for the purpose of securing his maintenance and education in the absence of support by his father or any means of her own by which to support him. And this for the purpose of rebutting any presumption of ill-conduct on the part of the boy, arising out of the fact brought out on cross-examination that he had been an inmate of a reform school for some two or three years.

[Abernethy *v.* Commonwealth.]

Counsel for the Commonwealth object to the offer as incompetent and irrelevant, and not the best proof of the cause of his commitment.

By the Court : " This offer is overruled, for the reason given in overruling a similar preceding offer, and a bill sealed for defendant." Exception. (Ninth assignment of error.)

Defendant having called one W. D. Bois to the stand offered to prove by him that deceased was a man of quarrelsome disposition. Objected to as irrelevant and incompetent. Objection sustained. Exception. (Tenth assignment of error.)

The Commonwealth having called one Dwyer in rebuttal asked him the following question :

" Mr. Dwyer, after Abernethy was taken out of the room by Early, how near were you to Leslie all the time until Leslie went out of the room ?" Objected to. Objection overruled and evidence admitted. Exception. (Eleventh assignment of error.)

Defendant having called Joseph Mitchell as a witness in surrebuttal asked him the following question : " Did you or did you not lend John Abernethy a handkerchief to wipe the blood from his lips or mouth ?" Objected to. Objection sustained. Evidence excluded. Exception. (Twelfth assignment of error.)

Verdict, guilty of murder in the first degree, and sentence of death pronounced accordingly, whereupon defendant took this writ filing the assignments of error noted above.

*George Elphinstone* (with whom were *Thos. M. Marshall* and *W. D. Moore*), for the plaintiff in error.—The threats of the defendant against other persons than the deceased were not admissible in evidence: Wharton's Crim. Ev. §§ 29, 30 ; Shaffner *v.* Commonwealth, 22 P. F. S. 65 ; State *v.* Smalley, 50 Vt. 750 ; U. S. *v.* Mitchell, 2 Dall. 357 ; Ogletree *v.* State, 28 Ala. 700 ; 1 Bishop on Criminal Pro. § 1085.

The evidence as to the character of deceased for violence was admissible : Monroe *v.* State, 5 Ga. 85 ; State *v.* Hicks, 27 Mo. 588 ; State *v.* Keene, 50 Mo. 357 ; State *v.* Bryant, 55 Mo. 75 ; Franklin *v.* State, 29 Ala. 14 ; Pritchett *v.* State, 22 Ala. 39 ; People *v.* Lamb, 54 Barb. 342 ; S. C., 2 Keyes 369 ; State *v.* Floyd, 6 Jones 392 ; State *v.* Smith, 12 Rich. 430 ; Fields *v.* State, 47 Ala. 603 ; Ripply *v.* State, 2 Head 217 ; Copeland *v.* State, 7 Hamp. 429 ; Commonwealth *v.* Robertson, Addison 246 ; Cotton *v.* State, 31 Miss. 504 ; People *v.* Garbut, 17 Mich. 16 ; Jackson *v.* State (unreported) page 476 Author ; Little *v.* State, (unreported) page 487 Author ; Keener *v.* State, 18 Ga. 194 ; Quesenberry *v.* State, 3 Stewart, Notes 308 ; State *v.* Tackett, 1 Hawks 210 ; State *v.* Barfield, 8 Iredell 344 ; Pritchett *v.* State, 22 Ala. 39 ; Franklin *v.* State, 29 Ala. 14 ; State *v.* Collins, 32 Iowa 36 ; State *v.* Hicks, 27 Mo. 588 ; Payne *v.* Commonwealth,

[Abernethy *v.* Commonwealth.]

1 Metcalfe 370; Wesley *v.* State, 37 Miss. 327; Wright *v.*
State, 9 Yerger 342; State *v.* Field, 14 Maine 244; State *v.* Tilley,
3 Iredell 424; Bottoms *v.* Kent, 3 Jones Law 154; State *v.*
Hogue, 6 Jones 381; State *v.* Thaley, 4 Harr. 562; State *v.*
Chandler, 5 La. Ann. 489; Commonwealth *v.* York, 9 Metcalf
93; Commonwealth *v.* Hilliard, 2 Gray 294; Commonwealth *v.*
Mead, 12 Gray 167; State *v.* Jackson, 17 Mo. 544; People *v.*
Murray, 10 Cal. 309; People *v.* Lombard, 17 Cal. 316; People
*v.* Edwards, 41 Cal. 640; Wise *v.* State, 2 Kane 419; State *v.*
Dumphey, 4 Minn. 438; Reynolds *v.* People, 17 Abb. 413;
Commonwealth *v.* Ferrigan, 8 Wright 386.

*H. A. Collier* (with whom was *John S. Robb*, district
attorney), for the defendant in error.—There was sufficient
evidence of premeditated intention to go to the jury: Hopkins
*v.* Commonwealth, 14 Wright 15. The violent character of
deceased was not admissible in evidence: Monroe *v.* State, a
Ga. 86; State *v.* Heiks, 27 Mo. 488; Commonwealth *v.* Lennox,
3 Brewst. 249.

Chief Justice SHARSWOOD delivered the opinion of the court,
November 20th 1882.

As this case goes back for another trial it would not be
proper for this court to express any opinion on the merits.
Although no assignment of error has been filed that the case
did not present the element for a verdict of murder in the first
degree, we think it right to say that upon that point we entertain
no doubt. Indeed, wherever the death is caused by the use of a
deadly weapon it must be for the jury to say under the evidence
whether there existed " a willful, deliberate and premeditated "
intention to take the life of the deceased.

The first two assignments are not according to rule, but the
same questions are well raised by subsequent specification. There
was no error in the answers of the court to the fifth, sixth and
seventh points of the defendants. Indeed, they have not been
insisted on here.

The eighth point of the defendant was " that the jury must
exclude in the consideration of the case any testimony as to any
threats alleged to have been made by defendant against Kain or
any other person except the deceased." This was refused by
the learned court and forms the subject of the sixth assignment.
The fatal shot seems to have been fired about half past five or
six o'clock of the evening of December 5th 1881, in the barroom
of a saloon in Diamond street. The accused had been in and
out several times during the day. It would seem that about
two o'clock of the same day he had met there a man named Kain,
who had a person with him whose name was unknown. A
quarrel arose and this person struck Abernethy a blow. He

[Abernethy *v.* Commonwealth.]

became much excited in consequence, and being to some extent under the influence of liquor, if not actually drunk, he made several threats that he would fix or kill Kain—sometimes adding Kain or somebody, and according to the testimony of one witness that he would kill somebody. All this however was before any quarrel had taken place between Abernethy and the deceased. When he applied to the witness Thomas Godfrey, for the loan of a revolver, which was about three o'clock, he told him "he was struck next door and he wanted to go down to Kain, to find out who struck him." There were four other witnesses, who testified to these threats, one of them said that he heard no name mentioned. We think the defendant's eighth point should have been affirmed. It is true that general threats to kill somebody would be evidence of malice and as such to be weighed by the jury. Had Dwyer's testimony stood alone and the jury should believe that it was not intended as against Kain or his companion, it might properly have been submitted to the jury as evidence of an intention to pick a quarrel and kill somebody. Such was the case in Hopkins *v.* The Commonwealth, 14 Wright 9. It is not easy to see how threats against a particular person, with whom the accused had a quarrel, ought to have any weight with a jury as to the malice or intention to kill another person with whom at the time he had no quarrel and whom afterward in a scuffle he killed: State *v.* Smalley, 50 Verm. 736, 750; Ogletree *v.* State, 28 Ala. 693, 700.

There was no error in the rejection of the evidence offered by defendant as complained of in the seventh assignment. It is clear that the deceased took no offence at the epithet applied to him by the accused, as immediately afterwards they shook hands and seemed on friendly terms. What did seem to have excited the anger of the deceased was Abernethy's words when he left the back room and which he said that he meant to apply to all who were there.

The eighth and ninth assignments may be considered together. William P. Bedell, a witness called by defendant to prove his good character for peace and order said on cross-examination : " I know the fact of his (the defendant) being sent to the Reform School." Q. "You have heard of course why he was sent to the Reform School? A. I did not: I heard rumors on the street that he went there of his own accord." The defendant afterwards offered to show by the testimony of his mother and another witness, that he had been abandoned by his father, that he had procured his admission to the Reform School "for the purpose of securing his maintenance and education in the absence of support by his father or any means of her own by which to support him." The learned judge rejected this evi-

dence, because the counsel for the defendant did not object to the cross-examination. We think that it ought to have been admitted. The cross-examination grew naturally out of the examination in chief as to character, and could not have been excluded except as mere hearsay. It had come out and would go to the jury, and surely it was competent for the defendant to brush away such a cloud upon his character.

The tenth assignment is to the rejection by the court below of evidence that the deceased was a man of quarrelsome disposition. As a general rule undoubtedly such evidence is inadmissible. But where it appears that the defendant and the deceased were on terms of intimacy, and the killing took place in a sudden scuffle, in which there was evidence that the deceased made an assault on the defendant if he did not actually strike him, we think it is admissible as evidence that the defendant may have considered himself as in some danger, and had resort to the weapon not to kill but disable his assailant: Rippy *v.* State, 2 Head 217; Franklin *v.* State, 29 Ala. 14; People *v.* Lamb, 54 Barb. 342; S. C., 2 Keyes 369; Reynolds *v.* People, 17 Abb. Pr. 413; 54 Barb. 350.

The defendant's objection to the Commonwealth's evidence as stated in the eleventh assignment was rightly overruled. It was strictly in rebuttal. And the evidence the rejection of which is complained of in the twelfth assignment was merely in effect of a declaration by Abernethy after the killing.

Judgment reversed and venire facias de novo awarded.