## Commonwealth *v.* Straesser, Appellant.

[Marked to be reported.]

*Criminal Law—Murder—Evidence—Dying declarations.*

On an indictment for murder, dying declarations of the deceased are properly received in evidence, although at the time they were made the deceased was under the influence of drugs, where the testimony showed that he understood everything that was said, that he made intelligent answers to all questions put to him, and that his mind was not appreciably affected by the drugs.

*Evidence as to dangerous character of the deceased.*

On an indictment for murder, evidence of the dangerous character of the deceased is properly rejected where self-defence is not alleged as a justification, and where there is no offer to show that the prisoner had any knowledge of the character of the deceased.

In such a case the evidence of the prisoner himself that upon one occasion the deceased pointed a revolver at a man with whom he had some difficulty, and threatened to shoot him, is not sufficient to show that the prisoner knew the general character of the deceased to be that of a quarrelsome and dangerous man.

*Wounds as evidence of willful murder.*

On an indictment for murder, where it was claimed that the killing was done in sudden passion, the evidence showed that the wounds inflicted on the deceased were six in number, one, six or eight inches deep into and through the abdominal cavity to the back bone, one upon the head, one on the arm, one on the hand and two on the buttocks. *Held*, that the number and character of the wounds were sufficient to sustain a verdict of guilty of murder in the first degree.

Argued Feb. 13, 1893. Appeal, No. 25, Oct. T., 1893, by defendant, George Straesser, from judgment of O. & T. Allegheny Co., Sept. T., 1892, No. 34, on verdict of guilty of murder in the first degree. Before Paxson, C. J., Sterrett, Green, McCollum, Mitchell and Dean, JJ.

Indictment for murder.

At the trial, before Kennedy, P. J., and McClung, J., evidence for the commonwealth tended to show that between 8 and 9 o'clock on the evening of Aug. 3, 1892, Joseph Brandl, the deceased, was standing in the yard belonging to his boarding house, which was kept by Mrs. Stuekenberger, close to the gate leading into Holt street, along the side of which and next to the yard, was a boardwalk, on which Mrs. Stuekenberger was seated. Her son Frank was also near her, and her husband, George Stuekenberger, was in the yard near Brandl, who was clad only in his pants and shirt, and without hat, cap or vest, shoes or stockings. At this time there came along this boardwalk Johanna and Rose Straesser, mother and sister of the prisoner, who addressed some derogatory remarks to the Stuekenbergers in regard to a lawsuit or suits, between the parties, which they had all been attending at the office of Alderman Beinhauer, including in these remarks the deceased, Joseph Brandl, to whom was applied some opprobrious epithets. These remarks were replied to by Brandl, who told Mrs. Straesser to go on or he would come out and strike her, and they (the Straessers) saying for him to come out and they would fix him, or he would be fixed. Brandl went out with nothing in his hands and struck or slapped Mrs. Straesser, when she, her daughter Rosa and her son Joseph Straesser, who came up at that juncture, all laid hold of the deceased Brandl, at the same time crying loudly for help. Immediately the prisoner, George Straesser, came up, armed with a knife and stabbed and cut the

deceased, inflicting the wounds in the abdomen, some three inches in length on the outside, vertically, and extending in depth some six or eight inches, into and through the abdominal cavity, cutting through one of the large intestines or bowels, into the omentum and the peritoneum, and into the kidneys, extending to the backbone on which it impinged, causing the death of Brandl. He also inflicted other wounds on the deceased, two in the buttocks, one of which was a large and deep wound, one on the head, another on the arm, and another on the hand and finger. The bowels of the deceased, as well as a portion of the omentum protruded through the wound in the abdomen, and he lingered in great agony until early next morning, when he died from the effects of his wounds.

Defendant claimed that he had no knife in his hand, that he did not strike the blow which caused the death of the deceased, but that the wound that caused the death was inflicted by the fall of the deceased upon the knife, which the deceased himself had in his hand.

The court admitted under objection and exception the dying statement of the deceased, which was as follows : " Southside Hospital, Pittsburgh, Pa. August 3, 1892. Mr. George Straesser come out and cut me. We had no words. Joseph Brandl, his mark. Witness his mark, G. J. Bleichner."

Objected to, because at the time it was made he was more or less under the influence of drugs. Objection overruled, and exception. [1]

Defendant offered to prove that deceased, Joseph Brandl, was a man of a quarrelsome nature, vicious disposition, and was feared in the neighborhood as a person of dangerous character, and had on several previous occasions threatened to shoot and kill people.

Objected to by the commonwealth as incompetent and irrelevant generally, and, secondly, because there is no proof contained in the offer to bring knowledge of these facts to the defendant. Objection sustained and exception. [2]

The court charged in part as follows, by KENNEDY, P. J: " As a general rule it may be stated that every homicide is presumed to be murder of some degree, and where it has been shown that the prisoner committed the deed the burden of reducing the crime from murder to manslaughter rests upon him.

But the burden of proof of the intention to kill and the disposition of mind constituting murder of the first degree under the act of assembly, which I have just quoted, lies on the commonwealth. . . . . As I have already stated to you all homicide is presumed to be malicious or murder of some degree until the contrary appears in evidence, and therefore the burden of reducing the crime from murder to manslaughter lies on the prisoner, when it is proven that he committed the deed. But while it is presumed to be murder, it is only of the second degree, until it is shown by the commonwealth to be murder of the first degree." (Then follows a statement of the facts of the case.) "But if you are satisfied beyond a reasonable doubt that the prisoner did strike the blow which did cause Brandl's death, then the presumption is that the crime is murder." (Followed by a statement of the law of manslaughter.) "But the burden of proving this is on the prisoner, as you will recollect. If he has not so proven, then the crime is murder of some degree, and it is your duty to determine whether of the first or of the second degree." [6]

Verdict, murder in the first degree. Defendant appealed.

*Errors assigned* were, inter alia, (1, 2, 6,) rulings on evidence, and charge, as above, quoting bills of exception and charge.

*Wm. A. Hudson, Thomas Ewing, Jr.,* with him, for appellant.—The evidence was insufficient to show the elements of murder in the first degree. It was, at the most, justifiable homicide, committed while a man was defending his mother and sister. (*a*) The intention to kill did not exist; therefore it was not willful. (*b*) The facts proven by the commonwealth do not show a mind conscious of its own purpose and design, and therefore it is not deliberate. (*c*) There was not sufficient time afforded to form the design to kill and to select the instrument to carry this design into execution, therefore it is not premeditated.

The court erred in admitting the dying statement of the deceased : (*a*) Because it was not the language of the deceased, he having spoken it in German and it being written down in English. (*b*) Because the deceased was so nigh unto death that he did not know what he was doing. (*c*) Because it was fragmentary.

On a trial for homicide, if it appears that the accused was acting in self-defence, or under reasonable apprehension of danger, or in a sudden passion without deliberation, evidence that the deceased was of violent character is competent: Com. v. Tiffany, 121 Pa. 165; Williams v. State, 14 Texas Ct. Ap. 102.

The dying declaration should have contained some of the particulars of the fight: State v. Mathes, 90 Mo. 571; State v. Van Sant, 80 Mo. 67; Lambeth v. State, 23 Miss. 322; People v. Knapp, 1 Edm. Sel. Cas. (N. Y.) 179; R. v. Ashton, 2 Lewin C. C. 147; 6 A. & E. Enc. Law, 135.

*Clarence Burleigh,* district attorney, for appellee, not heard, cited: State v. Patterson, 45 Vt. 308; People v. Chin, 51 Cal. 597; State v. Nettlebush, 20 Iowa, 257; Vass v. Com., 3 Leigh (Va.) 786; Whart. Cr. Ev. § 608; Tiffany v. Com., 121 Pa. 165.

OPINION BY MR. CHIEF JUSTICE PAXSON, February 27, 1893:

The number and character of the wounds inflicted upon the person of the deceased is a sufficient answer to the allegation that the case does not contain the elements of murder of the first degree.

We find no error in admitting the dying declarations of the deceased. They were objected to upon the sole ground that at the time they were made the deceased "was more or less under the influence of drugs administered by Dr. Rossman." The objection was too indefinite to be entitled to any weight. Had it been that the deceased was so far under the influence of drugs as not to be conscious of what he was doing, there would have been more weight in the objection. It raised a question of fact which was for the court to decide in order to determine the admissibility of the evidence. There is nothing to show that the learned judge committed error in this particular. In his opinion, overruling the motion for a new trial, he said: "An examination of the testimony shows that the deceased understood everything that was said, and that he made intelligent answers to all questions put to him, and that his mind was not appreciably affected by the drugs."

Upon the trial below counsel for the defence offered to prove "by competent evidence that the deceased, Joseph Brandl, was

a man of quarrelsome nature, and was feared in the neighborhood as a person of dangerous character, and had, on several occasions previous, threatened to shoot and kill people." See third specification of error. This offer was rejected by the learned judge for the reasons that it was not coupled with any offer to show knowledge by the prisoner of the facts proposed to be proven; and because the defence set up was not self-defence.

We are of opinion that either of these reasons was sufficient to exclude the testimony. It is not denied that on a trial for homicide, if it appears that the accused was acting in self-defence, or under reasonable apprehension of danger, evidence that the deceased was of a violent and ferocious disposition is competent where the accused has knowledge of such character. In the case of Tiffany v. The Commonwealth, 121 Pa. 165, the offer was to prove " that Lafayette Crandell (the deceased) has a notoriously bad reputation, as to being a quarrelsome, bad-tempered, dangerous man, and that all this was known to Judson Tiffany (the accused) on the 15th of July, 1886, at the time of the shooting." The defence set up in this case was justifiable self-defence, and the offer was to show, not only the dangerous character of the deceased, but that such character was known to the accused. It was held in that case that the evidence should have been received.

In the case in hand the accused did not set up that the homicide was committed in self-defence. On the contrary, his defence was, that he did not slay the deceased. Of what possible consequence was it then whether the deceased was, or was not a dangerous man? We think the evidence referred to was offered in a case in which it had no application. And even if applicable, the offer should have gone further, and brought the knowledge of the deceased's bad character home to the accused. It was said, however, that the defendant had knowledge of his bad character, and that this knowledge cured the defect in the offer. The testimony relied upon to sustain this position is that of the defendant himself, who, upon cross-examination, stated that the deceased pointed a revolver at a man with whom he had some difficulty, and threatened to shoot him. This single instance was far from proving that the general character of the deceased was that of a quarrelsome and

dangerous man.   It simply proved that upon one occasion he had threatened to shoot another, without any of the circumstances surrounding the transaction, and tending to show how far his conduct was excusable.

We find nothing in the remaining specifications which requires discussion.

The judgment is affirmed, and it is now ordered that the record be remitted to the court of oyer and terminer for the purpose of execution.