389 A.2d 79

COMMONWEALTH of Pennsylvania, Appellee,

v.

Harold L. SCOTT, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued March 6, 1978.

Decided July 14, 1978.

Paul D. Boas, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Robert A. Zunich, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO, and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

This appeal is from the judgments of sentence imposed upon appellant, Harold L. Scott, by the Court of Common Pleas of Allegheny County following a jury trial and a return of verdicts of guilty of murder in the first degree and of violation of the Uniform Firearms Act. Following the filing of post-verdict motions, the judgment of sentence of life imprisonment for murder was appealed directly to us, and the judgment of sentence of a concurrent 2½ to 5 year prison term for the firearms violation was appealed to the Superior Court and transferred here.

At approximately 2:05 a.m., on October 19, 1974, Paul Infante, a 26 year-old white male was shot at close range by

appellant with a .38 caliber revolver; he was taken to the hospital and pronounced dead at 2:40 a.m. The cause of death was determined to be a gunshot wound to the victim's chest resulting in a perforation of the heart and lungs and consequent bleeding.

At trial, appellant did not dispute the fact that he fired the shot that killed Infante. Appellant contended, however, that he shot Infante only after repeated verbal efforts to get Infante to leave the area in front of his house, and only after Infante attacked him with a straight razor. In support of the defense version of the incident surrounding the shooting, appellant's wife, Alice Scott, testified that in the early morning hours of October 19, 1974, a large fight between black and white males erupted near the house occupied by her and appellant. At the time she and her young son were alone in the house. She told the jury that the fight involved a group of ten to fifteen white males, some of whom were carrying weapons, and that this group of whites was chasing two black youths down North Millvale Avenue past appellant's and her house. When the gang of whites reached the area in front of the house, and saw her looking from the window, they began threatening her with weapons and yelling "Come on out, nigger, we'll get you, too, nigger." At this point Alice Scott telephoned appellant, who was at a tavern about a block away from the house, and told him what was going on. Appellant instructed her to stay in the house and to call the police, and said he would be right there. Appellant then ran home and entered the house through the rear door. At this time some of the whites were at the front window. Appellant picked up his hand gun and exited the house through the front door.

Appellant testified that when he exited through the front door, he saw five white males in front of his home. Some of them were armed. Appellant then told the whites, to ". . . get away from my house," but Infante came at appellant with what appeared to be a straight razor. According to appellant, the crowd of whites urged Infante on, and after firing two warning shots, appellant fired what

turned out to be the fatal shot as Infante lunged toward him. Appellant then went into the house, told his wife to call an ambulance, re-exited the house and surrendered himself to the police when they arrived.

In support of his version of the incidents surrounding the shooting, appellant attempted to introduce testimony of his wife Alice Scott, who was called as a witness before appellant, of prior racial incidents that had occurred in the community, including a similar incident that took place thirty-five days prior to the shooting. According to defense counsel's offer of proof, the purpose of the proposed testimony was to show to the jury that appellant and his wife were in a state of fear at the time of the shooting. This evidence of appellant's state of mind was presumably intended to persuade the jury that appellant acted out of a reasonable fear for his life, or at the very least, to negate the prosecutor's contention that the shooting was done with malice. In support of this contention, defense counsel stated to the court that he wanted to introduce Alice Scott's testimony that on the earlier occasion, a gang of armed white males parked their car near the Scott home, got out of the vehicle, and brandished their weapons at appellant and his wife. The offer further stated that at the time of the previous incident, Alice Scott called the police but they never responded. The prosecutor objected to this line of questioning and the objection was sustained, with the trial judge ruling that the proposed testimony was irrelevant.

We agree with appellant that in refusing to allow the jury to hear evidence concerning this prior incident, the trial court deprived appellant of the opportunity to present relevant evidence concerning his state of mind at the time of the shooting. Because we conclude that in excluding this evidence the trial court committed reversible error, we need not now address the other issues raised by appellant in support of his contention that a new trial is required.

The instant case is controlled by *Commonwealth v. Stewart,* 461 Pa. 274, 336 A.2d 282 (1975). In *Stewart,* appellant admitted shooting the deceased in an apparent gang fight in

the West Philadelphia community where appellant resided. In an attempt to establish that he lacked the specific intent to kill required for a conviction of murder in the first degree, appellant sought to introduce evidence of gang activity in his neighborhood. We reversed the judgment of sentence and ordered a new trial in *Stewart*, stating,

> "[t]he testimony that appellant endeavored to elicit—that gang shootings had been frequent during the weeks preceding the deceased's death, that members of street gangs often carried deadly weapons into their battles, and that appellant himself had been once hospitalized by gang fighting—was relevant to establish the ferocity with which gangs clashed and therefore to raise an inference that panic and fear could be evoked by an incipient gang war. We hold that in excluding evidence of gang activity in appellant's neighborhood, the trial court withheld from the jury evidence of vital probative value to a determination of the defendant's state of mind."

*Id.* 461 Pa. at 282, 336 A.2d at 286.

Evidence which tends to establish some fact material to the case, or which tends to make a fact at issue more or less probable, is relevant. *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Davenport*, 462 Pa. 343, 342 A.2d 67 (1975). As we said in *Commonwealth v. Stewart, supra*, a two step analysis should be employed.

> "It must be determined first if the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence 'renders the desired inference more probable than it would be without the evidence[.]' McCormick's Handbook of the Law of Evidence § 185 (2d ed. E. Cleary 1972) (emphasis omitted); *cf. Commonwealth v. McCusker*, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972)."

461 Pa. at 278, 336 A.2d at 284.

In the instant case, appellant was charged with murder. As in *Stewart*, appellant did not deny that he fired the fatal shot. Instead, he attempted to show that he did not possess

the intent necessary to convict him of murder. *See* 18 Pa.C.S.A. 2502; *Commonwealth v. Stewart, supra.* As stated in *Stewart,* 461 Pa. at 279, 336 A.2d at 285,

> "Absence of the intent required for a particular degree of a crime, of course, precludes a conviction of that crime, although it may still be proper to convict of a lesser degree of the crime or of some included offense which does not require that intent. For at least a century we have held that a defendant may introduce evidence to prove factors existing prior to the homicide from which it may be inferred that at the time of the homicide he lacked the intent required for a conviction of murder in the first degree."

*See also, Commonwealth v. Nau,* 473 Pa. 1, 8, 373 A.2d 449, 452 (1977), where we said,

> ".  .  .  if appellant was acting under fear for his own life at the time he fatally shot his brother, then even though his fear was unreasonable, 'if it *actually* motivated appellant, his crime would be voluntary manslaughter, not murder.'" (citations omitted; emphasis in original.)

> "In *Commonwealth v. Jennings,* 442 Pa. 18, 23, 274 A.2d 767, 769–70 (1971), this Court acknowledged:
>
> > '.  .  .  where a defendant acts under an unreasonable fear that he is in danger of serious bodily harm, there may be a direct and specific intent to kill, and yet the offense may constitute voluntary manslaughter.'"

Similarly, in *Commonwealth v. Graves,* 461 Pa. 118, 126, 334 A.2d 661, 665 (1975), we said,

> "It would clearly be an anomaly to suggest that although the Commonwealth must establish the existence of a mental state beyond a reasonable doubt, and that failure to sustain the burden requires an acquittal; yet preclude the defendant from producing relevant evidence to contest the issue." (footnote omitted.)

Likewise, in *Commonwealth v. McCusker,* 448 Pa. 382, 391, 292 A.2d 286, 290 (1972), we stated,

> "Applying the established principles of relevancy to a murder prosecution where a defendant asserts that he

56

acted in the heat of passion, it seems clear that any evidence—lay or psychiatric—pertinent to that defense should be admissible."

■ Clearly appellant's state of mind was relevant in the instant case. The evidence he sought to present to the jury tended to establish that his actions were motivated by fear rather than the intent required to convict for murder. As we said in *Commonwealth v. Boyle,* 470 Pa. 343, 368 A.2d 661, 669 (1977), " . . . although motive is not an essential element of the crime, it is always relevant and admissible." As such, the evidence should have been admitted.

Judgments of sentence reversed and a new trial granted.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent.

At best, the proffered testimony of appellant's wife could have only corroborated testimony by appellant that as a result of an incident that occurred thirty-five days prior to the shooting, appellant was in a state of fear at the time of the shooting. However, appellant never testified that the aforementioned prior incident placed appellant in fear. Instead, appellant testified that the victim's "shiny object" placed him in fear:

Q  Now, Mr. Scott, at any time when you were confronted with this man with the shiny object in his hand, did you intend to shoot him?

A  No.

Q  Did you have any intention to take a life here?

A  No, sir, I did not.

Q  What was your intention with regard to that man?

A  All I wanted that man to do was get away from my home and leave my family alone, and as it turned out, all I wanted him not to do was to hurt me.

Q  And you were in fear?

A  Yes, I was.

Q  *And that object in this individual's hand put you in fear, is that correct?*

A   *Yes, it did.*   (Emphasis added)

Thus, the proffered testimony of appellant's wife would have been irrelevant and therefore, the trial court did not err in refusing to admit said testimony.