394 A.2d 968

**COMMONWEALTH of Pennsylvania**

v.

**David Lee STEWART, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 25, 1978.

Decided Nov. 18, 1978.

Carl G. Wass, Harrisburg, for appellant.

Marion E. MacIntyre, Second Asst. Dist. Atty., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, David Lee Stewart, was convicted by a jury on March 15, 1974, of voluntary manslaughter. Post-trial motions were denied and appellant was sentenced to a term of imprisonment from three to six years. This appeal followed.[1] For the reason hereafter given, we reverse the judgment of sentence and grant appellant a new trial.

The record discloses that on October 31, 1973, Stewart entered the Hill Recreational Center in Harrisburg, Pennsylvania, on his way home from work. At one of the pool tables in the recreational hall a crap game was in progress which Stewart joined. Jerry White, the decedent, subsequently entered the center and joined the group of men shooting dice and gambling at the crap table. An argument

---

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1978), since superseded by Section 722(1) of the Judicial Code, 42 Pa.C.S. § 722(1) (effective June 27, 1978).

then arose between Stewart and White over whether or not they had made a bet and, if so, who had won it. While the dispute was still going on, Stewart proceeded to leave the hall. He forced the front door open by pulling away a metal security bar attached to the door and started down the steps to the street carrying the bar. Stewart was quickly followed out the door by White, with two pool balls in hand, and one William Edwards, the man in charge of the building, who carried a pool stick. After some discussion among the three men, in the course of which, according to Stewart, White crossed the street to his car and brought back a gun, Stewart returned the metal bar to Edwards, and Edwards and White then reentered the building as Stewart left the scene.

Within ten minutes, Stewart reappeared in the pool hall carrying a gun. At this moment White had his back to the door. White then started to turn to face Stewart, at the same time reaching inside his coat, whereupon Stewart fired at least four shots at him. White was struck, fell against the wall and died with his gun in his hand, unfired. This gun was not recovered. After the shooting Stewart left the center, went home, changed his clothes, checked into a motel room overnight, and the next morning turned himself into the police at City Hall. He was then charged with murder.

At trial Stewart took the stand in his own defense. The gist of his testimony was that he returned to the recreational center for his jacket and fired at White in self-defense when White went for his gun. Other eyewitnesses testified that Stewart entered the hall with his gun drawn, approached the victim from the rear and commenced to fire at him. The victim's body bore three bullet entry wounds, one at the base of the spine, one in the left cheek and one in the left armpit where the fatal bullet entered before passing through both lungs.

■ Appellant argues that the refusal of the trial court to allow the admission of testimony of a prior incident of violent conduct by the decedent requires a new trial. We agree that such evidence was relevant to the question

whether appellant was acting out of fear at the time of the shooting, for an action so motivated would be in corroboration of his claim of self-defense.

The excluded testimony, according to the offer of proof, was by two persons who had witnessed an incident involving Jerry White within a month prior to his death. They would have testified that during a gambling dispute at the same pool hall, White had drawn his gun in a threatening manner and that the gun had misfired in his hand, without injury to anyone. The appellant himself was not present at the time of this incident but he claimed to have knowledge of it which gave him reason to believe his life was in danger on the evening now in question. Such a belief is necessary to establish the defense of self-defense. See *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. Roundtree,* 440 Pa. 199, 269 A.2d 709 (1970). We think the exclusion of this testimony as irrelevant was in error.

The introduction of evidence to show a defendant's knowledge of the victim's quarrelsome or violent character has historically been allowed to prove that the defendant reasonably believed his life to be in danger. *Commonwealth v. Stewart,* 461 Pa. 274, 336 A.2d 282 (1975); *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971); *Tiffany v. Commonwealth,* 121 Pa. 165, 15 A. 462 (1888); *Abernethy v. Commonwealth,* 101 Pa. 322 (1882); McCormick on Evidence § 193 (2d ed. 1972); 1 Wigmore on Evidence § 198 (3d ed. 1940). In this instance, however, the two witnesses who would testify to the prior violent act of the deceased could not testify to the deceased's having a reputation for violence. We must determine, then, whether defendant's knowledge [2] of a single prior act of violence by a person

2. The defendant must always demonstrate a particular knowledge of the deceased's character or reputation, or, in this case, of the specific act of violence, in order to establish a proper foundation for his claim that such knowledge put him in fear; whether or not the defendant has demonstrated a sufficiently particular knowledge is a preliminary question for determination by the trial court. *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971); *Abernethy v. Commonwealth,* 101 Pa. 322 (1882); *Hayes v. United States,* 367 F.2d 216, 223

whom he has killed may be admitted as tending to prove the victim's character as quarrelsome or violent.

■ The Commonwealth argues that evidence of a single violent act should not be admissible to prove the deceased's character for violence. This position was, indeed, once the law: *Commonwealth v. Straesser*, 153 Pa. 451, 26 A. 17 (1893); *Alexander v. Commonwealth*, 105 Pa. 1, 10 (1884). But since at least 1933 this Court has recognized the appropriateness of evidence of specific acts of violence which raise an inference of the deceased's violent and quarrelsome character. *Commonwealth v. Romanic*, 311 Pa. 415, 421, 166 A. 902, 904 (1933). More recently we have approved the admissibility of a victim's criminal record on this ground. *Commonwealth v. Amos, supra.*[3] We have allowed evidence to be admitted to establish the frequency and ferocity of gang shootings in defendant's neighborhood as proof of "the violent nature not only of the deceased, but also of the gang of which he was a member." Proof of violent nature was held to be relevant to the issue of defendant's state of mind at the time of the homicide. *Commonwealth v. Stewart, supra*, 461 Pa. at 283, 336 A.2d at 286–87.

Similarly, in *Commonwealth v. Darby*, 473 Pa. 109, 373 A.2d 1073 (1977), we ruled that the defendant should have been allowed to testify that he knew the decedent had been previously arrested, although not convicted, for violent crimes, and held that the arrest record should have been admitted to corroborate the defendant's testimony.[4] In

(10th Cir. 1966). See also *Dempsey v. State*, 159 Tex.Cr. 602, 266 S.W.2d 875, 877 (1954).

3. *Commonwealth v. Amos* also supports the proposition that evidence of a victim's prior criminal record is relevant to prove that the victim was in fact the aggressor. 445 Pa. at 302, 284 A.2d at 750. See also *United States v. Burks*, 152 U.S.App.D.C. 284, 470 F.2d 432, 434 (1972).

4. In *Darby* we distinguished between the proper admission of specific violent acts of the deceased victim to show the defendant's knowledge of the victim's quarrelsome and violent character, and the improper use of such acts, absent conviction, to show that the victim might have been the aggressor. *Cf. Commonwealth v. Amos, supra.*

*Commonwealth v. Scott,* 480 Pa. 50, 389 A.2d 79 (1978) following *Stewart, supra,* we concluded that evidence of prior violent racial confrontations was admissible to show that appellant's state of mind was one of fear rather than malice.

Precedent in this state, then, permits evidence of prior violent acts of the victim, or of a group of which the victim is a member, to be used to corroborate the defendant's knowledge of the victim's or the group's violent character, all to the end of establishing that the defendant reasonably believed that his life was in danger. This position is in line with the weight of authority today. *Maggitt v. Wyrick,* 533 F.2d 383, 386 n. 5 (8 Cir. 1976); *United States v. Burks,* 152 U.S.App.D.C. 284, 286–87, 470 F.2d 432, 434–35 (1972); *People v. Flores,* 539 P.2d 1236 (Colo.1975); *State v. Young,* 109 Ariz. 221, 508 P.2d 51 (1973); *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App.1972); *Williams v. State,* 252 So.2d 243 (Fla.App.1971); *State v. Johnson,* 270 N.C. 215, 154 S.E.2d 48 (1967); 1 Wigmore on Evidence § 198, 2 Wigmore on Evidence § 248 (3d ed. 1940); 40 Am.Jur.2d § 306 (1968); Fed.R.Evid. 405(b).

In sum, we hold that the fact that the deceased victim has but recently discharged a gun in the course of a gambling dispute in the same premises, as two eyewitnesses would testify, and that this occurrence was known to appellant prior to the instant shooting, should have been admitted as probative of the possibility that the victim possessed a known violent character which in turn would be relevant to the appellant's alleged state of fear of serious bodily harm at the time of the shooting.

Judgment of sentence is reversed and a new trial ordered.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent; a misfiring of a gun is not evidence of violent propensities.