J-S27001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN ALLEN MARTIN | : | |
| | : | |
| Appellant | : | No. 775 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 2, 2020
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000362-2019

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: NOVEMBER 15, 2021**

Appellant, Brian Allen Martin, appeals *pro se* from the judgment of sentence entered on March 2, 2020, following his jury trial convictions for third-degree murder and recklessly endangering another person ("REAP").[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows.  Police arrested Appellant at Cully's Bar in Elk County, Pennsylvania on May 5, 2019 following an incident wherein David Corey (Corey) was shot seven times inside of the establishment and later died.  On January 28, 2020, a jury trial commenced.  The Commonwealth presented various eyewitnesses and video surveillance footage from the incident.  Appellant testified on his

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2502(c) and 2705, respectively.

own behalf and claimed that he acted in self-defense. On January 29, 2020, the jury found Appellant guilty of the aforementioned charges. On March 2, 2020, the trial court sentenced Appellant to 12 to 24 years of imprisonment for third-degree murder and a concurrent term of six to 12 years of imprisonment for REAP. Appellant filed a timely post-sentence motion on March 12, 2020, which the trial court denied by opinion and order filed on June 30, 2020. This appeal resulted.[2]

On appeal *pro se*, Appellant presents the following issues[3] for our review:

> A. Did the [trial] court err in granting the [Commonwealth's] objection to character or trait evidence related to David Corey's reputation when [] Appellant[,] as a matter of law, [] was permitted to do so?
>
> B. Did the [trial] court err in denying [] Appellant's [m]otion in [l]imine to [p]reclude [the] use of the [t]erm [v]ictim during trial, because such usage of the term would unduly prejudice [] Appellant?

---

[2] Appellant filed a notice of appeal on July 27, 2020. On August 3, 2020, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After the trial court granted leave to file a *nunc pro tunc* Rule 1925(b) statement, Appellant complied. The trial court issued a "response to matters complained of on appeal" pursuant to Pa.R.A.P. 1925(a) on December 10, 2020. On January 25, 2021, Appellant filed a motion to remove counsel with this Court. On January 29, 2021, this Court entered an order which, *inter alia*, remanded the matter to the trial court for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988) to determine whether Appellant knowingly, voluntarily, and intelligently intended to proceed *pro se*. The trial court held a hearing and filed an order on March 12, 2020 granting Appellant's request to proceed *pro se*.

[3] We have reordered the issues for ease of discussion.

C. Was the jury's verdict entered in this matter against the weight of the evidence [presented at trial]?

Appellant's *Pro Se* Brief at 3.

In his first issue, Appellant claims the trial court erred or abused its discretion by barring character evidence relating to Corey's reputation and character "for being aggressive and assaultive." *Id.* at 11. Appellant claims the trial court erred in precluding the testimony of Commonwealth witness Breanna Park, the bartender at Cully's Bar on the night in question, about her personal observations of Corey. *Id.* at 11-16. More specifically, Appellant avers:

> [] Park was a long[-]standing employee at Cully's Bar. [] Park[] knew [] Corey for a substantial amount of time. [] Park[] has personally witnessed [] Corey engage in instigating, aggressive, and assaultive behaviors within the bar. [] Park would ha[ve] testified that [] Corey specifically targeted individuals who were either unfamiliar with [the] bar or surrounding community. [] Appellant's personal knowledge or lack thereof, of [] Corey's pertinent character trait to be violent and aggressive was irrelevant. The evidence [] was [sought] to identify the actual aggressor in the incident and to refute the Commonwealth's claim that [] Corey was merely "defending the honor of a woman."

*Id.* at 13 (record citation omitted).

Our Supreme Court has set forth our standard of review as follows:

> The standard of review governing evidentiary issues is settled. The decision to admit or exclude evidence is committed to the trial court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or

determinations will not be disturbed short of a finding that the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case.

*Commonwealth v. Koch*, 106 A.3d 705, 710–711 (Pa. 2014) (internal citations and quotations omitted).

This Court has stated:

Where a defendant offers to prove that he acted in self-defense, "he may use his deceased victim's criminal record either (1) to corroborate his alleged knowledge of the victim's quarrelsome and violent character to show that the defendant reasonably believed that his life was in danger; or (2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor." *Commonwealth v. Amos*, 284 A.2d 748, 751 (Pa. 1971) (footnote omitted). Where offered "merely 'to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor,'" mere arrests, without convictions, are inadmissible. *Commonwealth v. Darby*, 373 A.2d 1073, 1074 (Pa. 1977). *See also Commonwealth v. Smith*, 416 A.2d 986, 989 (Pa. 1980). Specific acts of violence by the victim may be offered only "to corroborate the defendant's knowledge of the victim's ... violent character, all to the end of establishing that the defendant reasonably believed that his life was in danger." *Commonwealth v. Stewart*, 394 A.2d 968, 971 (Pa. 1978).

*Commonwealth v. Ignatavich*, 482 A.2d 1044, 1046–1047 (Pa. Super. 1984); *see also Commonwealth v. Dillon*, 598 A.2d 963, 965 (Pa. 1991) ("Where [] character evidence is proffered to corroborate the defendant's state of mind, the defendant must demonstrate knowledge of the decedent's character or reputation in order to establish a proper foundation for her claim that such knowledge put her in fear.") (internal citations omitted). Where the defendant concedes that he did not know the deceased prior to the altercation, the defendant is ignorant of the deceased's alleged reputation for violence and

any prior incidents of assault by the deceased are irrelevant and inadmissible.

***Ignatavich***, 482 A.2d at 1047.

On this issue, in its opinion denying post-trial motions, the trial court

determined:

> [Appellant] attempted to offer testimony of the tavern bartender, for the purpose of showing that the victim, [Corey], had a reputation as a violent or aggressive person. The [trial c]ourt refused to permit the testimony, on the basis that it was irrelevant, as the [decedent], and his reputation were completely unknown to [Appellant] at the time of their confrontation.
>
> [...T]he risk and danger associated with a violent victim's character background, only becomes relevant when it was known by and inside the mind of, [Appellant] when he formed his opinion of whether he was in danger from the victim. Without that advanced knowledge, that reputation cannot later be introduced to attempt to persuade the jury that [Appellant] reasonably acted with knowledge or belief that he was in imminent danger.

Trial Court Opinion, 6/30/2020, at *2 (unpaginated).

Furthermore, in its opinion pursuant to Pa.R.A.P. 1925(a), the trial court

opined:

> As the evidence showed, and [Appellant] confirmed with his own testimony, [Appellant] was not a "regular" at the local "corner bar," and had only been in Cully's on one prior occasion. At no time in the past had [Appellant] met, or become aware of, David Corey. [Appellant] simply was not aware of how dangerous or violent Corey might be, or might not be. It is assumed that [Appellant] later discovered character facts which would reflect negatively on Corey's reputation (*i.e.* violent outbursts in the past... domestic violence actions... prior conflicts in Cully's [sic]), and wished to get those negative character traits before the [j]ury to bolster his claim that he was threatened and in danger, and needed to defend himself with force. The glaring bar to that damaging character testimony[] was that NONE of this was known by [Appellant] on May 5, 2019, when he acted and shot Corey.

- 5 -

> The offered character testimony was properly excluded from the [j]ury's consideration.

Trial Court Opinion, 12/10/2020, at *2 (unpaginated).

We discern no abuse of discretion or error of law in precluding character evidence of Corey's alleged reputation for violence. As the above cited case law makes clear, in order to present evidence of Corey's alleged violent reputation, Appellant was required to demonstrate he had prior knowledge of Corey's purported violent character or reputation to establish a proper foundation for his claim that such knowledge put him in fear to justify self-defense. Appellant, however, concedes that he "had no prior interactions with [] Corey" before the incident in question. Appellant's *Pro Se* Brief, at 8. As such, at the time of the shooting, Appellant was ignorant of Corey's alleged reputation for violence and, therefore, Corey's reputation for violence was wholly irrelevant and inadmissible. ***Ignatavich***, 482 A.2d at 1047. Moreover, we note that Appellant sought to introduce character evidence about Corey through Park's testimony, but her knowledge of Corey's purported reputation was likewise wholly irrelevant and inadmissible. As our analysis has suggested, Park's knowledge of Corey's reputation for violence was irrelevant given Appellant's total lack of awareness of Corey's character. Accordingly, we discern no abuse of discretion or error of law by the trial court in precluding character testimony regarding Corey's alleged propensity for violence at trial.[4]

_____

[4] Finally, with regard to Appellant's argument that Park's testimony was necessary to show Corey was the aggressor, Appellant was only permitted to
*(Footnote Continued Next Page)*

Next, Appellant claims that the trial court erred or abused its discretion by denying his pre-trial motion *in limine* "to preclude the use of the term 'victim' during trial, due to the prejudicial effect such use would create" because "[t]he term victim is conclusory and assumes a crime has been committed." Appellant's *Pro Se* Brief at 23. On this issue, Appellant claims:

> During trial [] Appellant didn't dispute the fact that [] Corey's death was caused by the discharging of his firearm. [] Appellant disputed the Commonwealth's allegation that he wasn't justified in undertaking these actions. [Using the term "victim" to describe Corey] unconstitutionally placed a burden upon [] Appellant to prove, in fact, [] Corey wasn't a victim. This contorted [] Appellant's presumption of innocence and shift[ed] the burden of proof upon [him,] the accused.
>
> The term was highly inflammatory towards [] Appellant's defense at trial. This term was in opposition to [] Appellant's self-defense claim. The term ["victim"] unjustifiably stoked sympathy from the jury for [] Corey by indicating a sense of wrongdoing on the part of [] Appellant.

*Id.* at 24. Further, Appellant claims use of the term "victim" was not fleeting and that the Commonwealth used the term 13 times during its opening statement and 33 times during the entire trial. *Id.* As such, Appellant argues that although the trial court issued a cautionary instruction to the jury about use of the term "victim," Appellant asserts "the excessive use of the terminology nullified any force [the jury] instruction may have had otherwise." *Id.*

---

rely upon convictions from Corey's criminal record to show allegedly violent propensities. *Ignatavich*, 482 A.2d at 1046-1047. Appellant has never alleged, or proffered evidence, that Corey had any criminal convictions.

Here, the trial court determined:

> [...After o]pening statements from the Commonwealth and the [d]efense, the [trial c]ourt directly cautioned and instructed the [j]ury not to assume any facts, or to pre-judge any party or witness, based upon "titles" given to them by the system. This cautionary instruction was intended to prevent any possible prejudice to [Appellant] through statements made by the Commonwealth [] or witnesses. [The trial c]ourt maintain[ed] that no prejudice was suffered by [Appellant.]

Trial Court Opinion, 12/10/2020, at *1 (unpaginated).

We agree with the trial court's assessment. In this case, before the trial began, the trial court issued an instruction to the jury that the arguments of counsel "should be given due consideration but they are not evidence." N.T., 1/28/2020, at 12. The trial court also stated that "[o]nly the evidence which has been admitted during the trial can be considered by [the jury] in determining the facts." *Id.* at 12-13. Thereafter, following opening statements, the trial judge issued the following additional instruction to the jury:

> One thing I forgot to mention in my opening instructions, ladies and gentlemen, is there are a number of titles that are going to be used throughout this case, and they're designed to help everybody who does this for a living keep straight who's who. There's a thing you'll – you might hear somebody referred to as the affiant. They're a person who has filed an affidavit, usually the investigating officer.
>
> You'll hear someone referred to as a victim. Again, usually that's the person who the police have identified as having been involved in an altercation or, in this case, a shooting. None of those titles are – should be interpreted by you as a judgment from anybody. It's sort of a place keeper. It's sort of a marker, lets us keep track of who's who without necessarily remembering all the names. And so don't let those titles in any way influence your thinking.

*Id.* at 47-48. In its final instructions to the jury, the trial court reminded the jury that "speeches of counsel are not part of the evidence" and that it was for the jury "alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions" given. *Id.* at 224-225.

"The trial judges of this Commonwealth exercise broad powers while presiding at the trial of cases assigned to them. These powers include ruling on the admission or exclusion of evidence and controlling the scope of examination and cross-examination of witnesses." ***Commonwealth v. Tighe***, 184 A.3d 560, 571 (Pa. Super. 2018). Here, although the trial court did not preclude use of the term "victim" at trial, we discern no abuse of discretion because, instead, the trial court issued a cautionary instruction to the jury regarding the limited purpose of that term. Cautionary instructions may be adequate to overcome any potential prejudice. ***See Commonwealth v. Gilliam***, 249 A.3d 257, 274 (Pa. Super. 2021) ("the trial court's prompt cautionary instruction was sufficient to ameliorate any prejudice [Gilliam] may have suffered from [a] brief statement, which did not prevent the jury from rendering a true verdict"). Moreover, "[a] trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law." ***Commonwealth v. Baker***, 963 A.2d 495, 507 (Pa. Super. 2008) (internal citations and quotations omitted). Here,

- 9 -

Appellant does not complain that the jury instructions were somehow erroneous, he did not object when they were given, and we conclude the trial court's instructions were not inaccurate statements of law. Furthermore, "[t]he jury is presumed to have followed the court's instructions." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1147 (Pa. 2011) (citation omitted). Accordingly, we find no merit to Appellant's claim that he was prejudiced by referring to Corey as a victim during trial.

Finally, Appellant claims that the verdict was against the weight of the evidence presented at trial. Appellant's *Pro Se* Brief at 16-22. He argues "the surveillance video recording unequivocally demonstrated that [] Appellant acted in self[-]defense" and, therefore, the trial court erred "by stating that the jury reviewed the surveillance video recording an abundan[t] amount of times and still concluded that [] Appellant was the aggressor." *Id.* at 16. Appellant claims that he was much smaller than Corey and that Corey threatened to kill him and then savagely assaulted Appellant. *Id.* at 17. Appellant claims he was free from fault and he "had no prior communication with [] Corey prior to his surprise attack." *Id.* at 19. Appellant claims that he "provided [] Corey two verbal warnings that he had a firearm" and discharged a single, non-lethal shot "straight up at the ceiling in a non-threatening manner, in an attempt to deescalate the situation." *Id.* at 20-21. However, Appellant maintains:

> Corey ignored this retreat and instead lunged forward in continuance of his attack by punching [] Appellant in the head and attempting to grab his firearm. At this point, [] Appellant being

- 10 -

severely injured (*i.e.* los[s] of vision), he discharged his firearm until [] Corey was no longer a threat to his health and well-being. Even after the last shot was fired, [] Corey continued to assault [] Appellant.

*Id.* at 21.   Appellant claims that "Corey entered the bar through the back entrance of the bar and at anytime during this event could ha[ve] simply decided to refrain from assaulting [] Appellant and leave out the very same door he entered the bar that night." *Id.*

We adhere to the following standards:

When considering challenges to the weight of the evidence, we apply the following precepts.   The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses.   Resolving contradictory testimony and questions of credibility are matters for the finder of fact.   It is well-settled that we cannot substitute our judgment for that of the trier of fact.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.   One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

- 11 -

*Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021) (internal citations, quotations and brackets omitted).

The trial court determined:

The [j]ury had a body of testimony to consider, including [Appellant's] own testimony and that of several eyewitnesses who were in Cully's Bar at the time of the shooting. Furthermore, the Commonwealth introduced the "security video" from inside the bar, which captured the shooting. The video was shown to the [j]ury a minimum of 25 times, including twice during deliberations, when the [j]ury requested to view the video again. The body of evidence supporting the [g]uilty verdict of the [j]ury was substantial, and for [Appellant] to baldly assert otherwise, without specifics or supporting examples, does not invalidate the careful and committed consideration by this [j]ury, of all the evidence presented.

Trial Court Opinion, 12/10/2020, at *2-3 (unpaginated).

Here, the jury viewed the surveillance video and heard the testimony of the witnesses in rendering its verdict and we may not substitute our judgment for theirs. The jury also heard Appellant's version of events, together with the observations of other witnesses, and is presumed to have considered the credibility and weight of this evidence as it deliberated its verdict. In light of the evidence presented at trial, the trial court determined that the jury's guilty verdict on third-degree murder and REAP did not shock its conscience. We give the gravest consideration to the trial court's findings and reasons and discern no abuse in the rejection of Appellant's weight claim. Accordingly, Appellant's weight of the evidence issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/15/2021