J-S03043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL E. EWING | : | |
| | : | |
| Appellant | : | No. 60 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 27, 2023
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000550-2022

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

CONCURRING MEMORANDUM BY KUNSELMAN, J.: **FILED: JULY 11, 2025**

I concur in the result reached by the Majority. However, I write separately because Ewing's appellate argument does not persuade me that the trial court abused its discretion by admitting the two photographs of M.M. and Ewing or the photograph of H.H. Ewing contended throughout his case that the photographs were inadmissible under Rule 403 of the Pennsylvania Rules of Evidence. The Majority divines from Ewing's three-paragraph argument that he was *actually* disputing the photographs' relevance under Rule 401. It then rules that the trial court erred in admitting the photographs for that reason, but it excuses the error as harmless. I would instead assess the issue under Rule 403 and find that the trial court acted within its discretion.

On the first day of trial, M.M. testified that he worked for Ewing's DJ business from ages 11 to 15. Ewing cross-examined M.M. about how M.M. continued working for Ewing's DJ business despite the alleged abuse and how

M.M. later stopped working for him. N.T., 1/10/23, at 142–43. Ewing brought up how M.M. still interacted with Ewing on occasion and how M.M. asked Ewing for help when he was in trouble. *Id.* at 148–51. On redirect, the prosecutor asked M.M. about Ewing firing him from the DJ business and how their familial relationship appeared in public. *Id.* at 154–56. Ewing then objected to the prosecutor introducing two photographs of M.M. and Ewing together. *Id.* at 157. The prosecutor stated that the picture of M.M. with Ewing at the DJ booth would corroborate M.M.'s testimony that he was comfortable working with Ewing, and the picture of a young M.M. on a family vacation with Ewing would support M.M.'s explanation for why he would still want to be with Ewing. *Id.* at 157–59.

Ewing articulated the reasons for his objection: the photographs would merely duplicate uncontested facts, and they risked the unfair prejudice of an emotional response from the jury. *Id.* at 159–60.

> Your Honor, first off, I am objecting to both of these pictures for two grounds. I think their probative value is extremely limited, if any. We are not arguing they never spent time together. As a matter of fact, pretty clearly [M.M.]'s not even 15 years old in any of these pictures.
>
> . . . [W]e're not arguing they never spent time together. You know that from outside appearances that everything seemed normal. We're not getting into that.
>
> This, the whole point of [the prosecutor] showing these to the jury is to play on their emotions, show pictures of [M.M.] when he was a small child. The risk of unfair prejudice by playing to the emotions of the jury, to the jury is extremely high.
>
> Now, [M.M. has] testified that they spent time together. We're not contesting that they spent time together. What is the

probative value of these photos? They are nothing. It's just a pure emotional play, Your Honor, and they should be inadmissible.

*Id.* Addressing the prejudicial effect of the photographs, Ewing continued: "if there was something inappropriate happening in these photos they would have probative value. What we have are pictures of cute kids hanging out with Mike, showing pictures of cute kids to play on the jury's emotions. If there was something inappropriate--." *Id.* at 160–61. The trial court overruled the objection. The Commonwealth used the photographs as promised: to corroborate that M.M. was comfortable working with Ewing in public and comfortable reaching out to Ewing for help. *Id.* at 162–64.

The next day, the Commonwealth presented testimony from H.H.'s mother. To support her testimony that H.H. and M.M. looked similar as children, the Commonwealth presented the school portrait of H.H. Ewing objected based on Pennsylvania Rule of Evidence 403:

Your Honor, my objection to these is similar to the objection of the previous photos. It's based on Rule of Evidence 403. I think in this case I have a stronger argument in that [H.H.'s] mother already testified that they looked extremely similar, had the exact same haircut. So this picture is cumulative in that respect.

On top of that, this is another emotional play on the jury showing them a picture of the alleged victim as a small child. So I think that considering we've already had testimony to the effect that they look similar, which isn't really in dispute, showing this picture is unfairly prejudicial to my client in such a way that it substantially outweighs its probative value.

\* \* \*

The authority for my objection[ is] 403. Showing pictures of these children at a young age . . . runs a very high risk of evoking an emotional response from the jury. Emotions are not evidence, therefore, that prejudice would be unfair. That substantially

- 3 -

outweighs the probative value of these pictures which is merely to corroborate [H.H.'s mother's] testimony that the two kids looked similar, which again is not a fact in dispute.

N.T., 1/11/23, at 76, 78.

Explaining the Commonwealth's use of the photograph of H.H., the prosecutor argued, "it's not just that they look similar. [The Commonwealth's] whole case here is that [Ewing] had a type. He groomed one little boy, and when that boy aged out, he went for the next best thing." *Id.* at 78. Ewing argued that the photograph was not necessary for corroboration and was thus cumulative. *Id.* at 78–79.

The trial court overruled the objection. The Commonwealth used the school picture of H.H. as promised, to illustrate with H.H.'s mother that H.H. and M.M. "are the most similar looking people in [her] family." *Id.* at 81. The jury ultimately found Ewing guilty, and the trial court sentenced Ewing.

In his post-sentence motion, Ewing reiterated his contention that "the potential for unfair prejudice was high as compared to the photos' probative value as well as it being cumulative to testimony/evidence already presented." Post-Sentence Motion, 9/14/23, at 8. The trial court denied relief, and Ewing appealed. The court relied on Ewing's post-sentence motions to structure its opinion under Pennsylvania Rule of Appellate Procedure 1925(a). It concluded that the photographs' probative value (showing Ewing's modus operandi) "outweighed any possible prejudice that may have been caused by the emotional impact the sight of 'young boys' may have had on the jury." Trial Court Opinion, 2/6/24, at 15–16.

On appeal, Ewing heads the section of his brief devoted to this issue as: "The trial court abused its discretion in admitting evidence of photographs of both victims as young children with Appellant when the photographs constituted cumulative evidence and the potential for prejudice outweighed its probative value." Ewing's Brief at 25.[1] Ewing cites zero cases, statutes, or rules of evidence in this section of his brief. He does not mention relevance. He does, however, repeat the substance of his post-sentence motion. He argues the photographs lacked probative value because there was already testimony supporting the Commonwealth's theory and they risked unfair prejudice because they depicted the victims as "cute young boys." Ewing further contends the photographs were unnecessary cumulative evidence.

The Majority reads Ewing's argument as one of relevance. Relying on a case cited by the Commonwealth, the Majority finds that the trial court erred in determining that the photographs were necessary for either of the purposes asserted at trial. *See Commonwealth v. Vucich*, 194 A.3d 1103 (Pa. Super. 2018). However, the Majority determines that the error was harmless, as the photographs were used only briefly and were cumulative of other, properly admitted evidence.

---

[1] Compare the corresponding question presented: "Whether the trial court abused its discretion in permitting photographs of the victims as juveniles to be admitted as evidence where there was already testimony that the victims and appellant were close and had a good relationship at one point?" Ewing's Brief at 9 (capitalization omitted).

I begin my analysis with our standard of review. A trial court exercises discretion over evidentiary rulings, which an appellate court will not reverse unless the trial court abused its discretion. ***Commonwealth v. Gallaway***, 283 A.3d 217, 222–23 (Pa. Super. 2022) (citing ***Commonwealth v. Le***, 208 A.3d 960, 970 (Pa. 2019)). "An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id.*** at 223 (citing ***Commonwealth v. Talley***, 265 A.3d 485, 530 (Pa. 2021)). An appellant bears the "heavy burden" to prove how the trial court abused its discretion. ***Commonwealth v. Saez***, 225 A.3d 169, 177–78 (Pa. Super. 2019) (quoting ***Commonwealth v. Gill***, 206 A.3d 459, 466 (Pa. 2019)).

The "threshold inquiry" for the admission of evidence is relevance. ***Commonwealth v. Yale***, 249 A.3d 1001, 1022 (Pa. 2021) (quoting ***Commonwealth v. Collins***, 888 A.2d 564, 577 (Pa. 2005)). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." ***Commonwealth v. Faison***, 297 A.3d 810, 825 (Pa. Super. 2023) (quoting Pa.R.E. 401). Put differently, relevant evidence "tends to establish some fact material to the case or . . . tends to make a fact at issue more or less probable." ***Commonwealth v. Foy***, 612 A.2d 1349, 1350 (Pa. 1992) (citing ***Commonwealth v. Scott***, 389 A.2d 79 (Pa. 1978)). Whether a fact is material to the case depends on the issues presented at trial.

*Commonwealth v. Stewart*, 336 A.2d 282, 284 (Pa. 1975). "All relevant evidence is admissible, except as otherwise provided by law." *Yale*, 249 A.3d at 1022 (quoting Pa.R.E. 402).

Notably, one exception to the general rule of admissibility for relevant evidence is articulated in Rule 403:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403. This rule reflects a trial court's discretion to exclude otherwise relevant evidence given another factor such as unfair prejudice or needlessly presenting cumulative evidence. *Commonwealth v. DiStefano*, 265 A.3d 290, 299 (Pa. 2021). "'Unfair prejudice' means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Wright*, 961 A.2d 119, 151 (Pa. 2008) (citing Pa.R.E. 403, *Official comment*). A trial court must engage in "a fact-intensive, context-specific inquiry" to weigh the probative value and the potential for unfair prejudice of a piece of evidence. *Commonwealth v. Hicks*, 91 A.3d 47, 53 (Pa. 2014). The court is not required to "sanitize" a trial by excluding relevant facts. *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). "[I]t is not for an appellate court to usurp" a trial court's performance of this test. *Commonwealth v. Parker*, 882 A.2d 488, 492 (Pa. Super. 2005) (citing *Commonwealth v. Bartlett*, 288 A.2d 796, 800 (Pa. 1972)).

This Court decided **Vucich** on relevance grounds, holding that a trial court abused its discretion by admitting childhood photographs of a sexual abuse victim into evidence. The trial court reasoned that the photographs "helped the jury to picture [the victim] as a child so that the jury could better evaluate his testimony." **Vucich**, 194 A.3d at 1108. The Commonwealth similarly argued the photographs were needed "to visually depict [the victim's] appearance at the time the crimes occurred." **Id.** at 1109. We rejected both contentions. Because the defense did not dispute that the victim was a child at the time of the alleged abuse, there was "no need to prove to the jury what [he] looked like as a child." **Id.** Therefore, the evidence was irrelevant. **Id.** at 1109–10. Our holding was, however, limited to the facts of the case, where the only purpose of the photographs was to establish the inconsequential fact of the victim's appearance at the time of the crimes. **Id.** at 1111.

Here, Ewing did not argue at trial or in this appeal that the photographs of M.M. and H.H. were not relevant under Rule 401.[2] Rather, Ewing approached the issue by challenging the weight of the photographs' probative value against their risk of unfair prejudice under Rule 403. Addressing the issue Ewing raised, I would find that the trial court did not commit an error of law or otherwise abuse its discretion.

---

[2] Ewing states at times that the photographs had "no probative value." If this were true, however, there would be no need to argue any potential for unfair prejudice. **Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa. Super. 2013) (citing **Commonwealth v. Robinson**, 721 A.2d 344, 350 (Pa. 1998)).

As to probative value, each photograph had a different purpose. The Commonwealth sought to use the photograph of M.M. working in Ewing's DJ business to support M.M.'s testimony on redirect that he was comfortable with Ewing in public; the vacation picture would illustrate why M.M. still contacted Ewing after the alleged abuse. Ewing inquired as to both matters on cross-examination. I would find the record supports the trial court's acceptance that these photographs had probative value to corroborate what M.M. said about what Ewing asked him. The school portrait of H.H. was admittedly used to show H.H.'s appearance at the time of the crimes, which at first glance appears to violate **Vucich**. However, unlike in **Vucich**, H.H. was not the only victim. His appearance *was* relevant to the Commonwealth's theory of the case, which was that Ewing chose a second victim who looked like M.M.

I would reject the notion that the witnesses' testimony as to the facts underlying the photographs somehow minimizes the probative value of this evidence. Simply put, a photograph shows what words cannot. Generally, "the Commonwealth is entitled to prove its case by relevant evidence of its choosing." **Hicks**, 91 A.3d at 55 (citing the "familiar, standard rule" of **Old Chief v. United States**, 519 U.S. 172, 186–87 (1997)). Considering the Commonwealths' theory that Ewing chose H.H. because he looked like M.M., the childhood photographs of both victims allowed the jury to assess the case in a way that testimony could not. Similarly, I would reject Ewing's argument that photographic evidence was cumulative to testimonial evidence.

As to the trial court's assessment of the risk of unfair prejudice, I see no abuse of discretion. The trial court acknowledged that the jury's emotions could be stirred by the images of Ewing's victims as children, but believed the probative value outweighed any unfair prejudice. Ewing does not explain how the trial court's decision misapplied the law, was the product of bias, ill will, or prejudice, or was manifestly unreasonable. I would conclude that the trial court's rulings were a permissible exercise of its discretionary authority over the evidence at trial.

Because I would find that the trial court did not abuse its discretion in admitting the photographs, I would not reach the harmless error inquiry. Thus, I respectfully concur in the result reached by the Majority.

Judge Sullivan joins the Concurring Memorandum.